UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Laura Elias | | N/A |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants | | |
| Michael Roth<br>James Weinberger | Jeffrey Kobulnick<br>Mark Brutzkus | | |

**Proceedings:**  **PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** (filed December 10, 2012)

## I. INTRODUCTION

On December 7, 2012, plaintiff Athleta, Inc., filed suit against defendants Pitbull Clothing Co., Inc. d/b/a Athletica.net ("Pitbull"), Cory Peck, and Does 1–10. The gravamen of plaintiff's complaint is that defendants have infringed upon plaintiff's ATHLETA trademark, in violation of state and federal laws. Plaintiff thus brings claims for (1) federal trademark infringement and counterfeiting under 15 U.S.C. § 1114(1); (2) unfair competition and false designation of origin under 15 U.S.C. § 1125(a)(1)(A); (3) unfair competition under California law, Cal. Bus. & Prof. Code §§ 17200 et seq.; (4) federal false advertising under 15 U.S.C. § 1125(a)(1)(B); and (5) false advertising under California law, Cal. Bus. & Prof. Code §§ 17500 et seq.

On December 10, 2012, plaintiff filed the instant motion for a preliminary injunction based its first, second, and third claims for relief. Dkt. No. 8. Defendants opposed the motion and filed various evidentiary objections on December 17, 2012, Dkt. Nos. 16, 17. Plaintiff filed its reply and response to defendants' objections on December 21, 2012. Dkt. Nos. 20, 21. The Court held a hearing on January 7, 2013. After carefully considering the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

Since 1998, Athleta has been in the business of marketing and selling "feminine performance apparel" for a wide variety of sports and fitness endeavors. Decl. of Tess

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

Roering ¶ 3.[1] Athleta is "one of the premier brands" in this segment of the market, and has offered for sale, marketed, and sold clothing under the name and mark ATHLETA since its inception. Id. ¶¶ 3, 4. Athleta also uses a unique "pinwheel design mark" in connection with the sale of its goods and in order to identify the ATHLETA brand on its website and other marketing materials. Id. ¶ 5. Most of the products that plaintiff sells bear the ATHLETA and/or the pinwheel mark, although plaintiff also sells some unidentified third-party merchandise. Id. ¶ 6. Plaintiff sells its merchandise through a popular internet website, catalogs, and thirty-five retail stores in various states. Id. ¶¶ 8, 12.

Plaintiff sells millions of dollars of its products each year, and it has promoted and maintained the Athleta brand's reputation among consumers in a variety of ways. Id. ¶ 9. Plaintiff spent significant sums on advertising in 2011, in traditional print media including various magazine publications, as well as in new media, such as on its website, Athleta Chi blog, and various social media sites like Twitter an Facebook. Id. ¶¶ 11–14. Plaintiff has also sponsored a number of female athletes and organizations devoted to promoting healthy lifestyles among women and girls. Id. ¶ 15. Plaintiff's Athleta brand has achieved widespread recognition and goodwill in the marketplace as a result of its promotional efforts and commercial success. Id. Athleta has obtained three incontestable federal trademark registrations protecting its ATHLETA mark, three federal trademark registrations covering its pinwheel design mark, and additional registrations for its proprietary PILAYO and VELOCITEK fabrics. Decl. of James Weinberger ¶ 3–6, Exs. 19–22.

Defendant Pitbull and its predecessor in interest have been using the term ATHLETICA as a service mark in connection with selling retail apparel through its athletica.net website since 2003. Decl. of Cory Peck ¶ 5. Defendant also sells retail clothing through its pitbullclothing.com website, as well as other outlets for its InTouch and SF City Lights brands of clothing. Id. ¶ 11. Plaintiff contends that as its Athleta brand grew in popularity and name recognition, defendant's athletica.net website grew to resemble the look and feel of plaintiff's Athleta website. Roering Decl. ¶ 27; Compl. Ex. B (depicting yearly snapshots of the front page of the parties' respective websites from 2005 until October 2012). In or around September 2010, plaintiff first contacted

---

[1] Athleta was acquired by Gap, Inc., in 2008.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

defendants regarding their use of an atheletica.net website that bore a resemblance to plaintiff's website. Weinberger Decl. ¶¶ 7, 8; Ex. 23. Defendants responded through their counsel that because Pitbull Clothing does sell any clothing under the Athletica name, any dispute between the parties is solely over the "protectable trade dress elements," if any, of the competing clothing websites, not trademark infringement related to the products themselves. Id. Ex. 24 at 3.[2] The parties then engaged in negotiations regarding a sale of the athletica.net domain name, but no agreement was ever reached. Weinberger Decl. ¶ 8; Peck Decl. ¶ 8.

In February 2012, Pitbull first contemplated expanding the use of its ATHLETICA service mark to use as a trade mark on some of its women's apparel. Peck Decl. ¶ 13. By this time, Pitbull's online Athletica store was "well recognized" by consumers as a source for quality sports apparel, and received approximately twenty to twenty-five thousand visits per month. Id. ¶¶ 10, 13. According to defendants, the design which Pitbull selected "happened to be similar to plaintiff's own stylized Athleta mark and pinwheel design," although defendants maintain this was an innocent mistake. Id. ¶ 14. Defendants state that they only sold apparel bearing the Athletica name and pinwheel design from April 2012 until September 2012. Id. ¶ 13. Depicted below on the left is plaintiff's ATHLETA mark and pinwheel design; on the right is Pitbull's ATHLETICA mark and pinwheel design that was affixed to various articles of clothing:

 

Roering Decl. ¶ 20.

In mid-November 2012, plaintiff first became aware that defendants were selling products under the ATHLETICA brand name with the label depicted above, in addition to other acts by defendants that plaintiff objects to. Id. First, defendants had engaged multiple sales via the websites Groupon and Living Social, whereby they offered discounted women's yoga clothing products for sale the holiday shopping season,

---

[2] See id. Ex. 24 ("Pitbull Clothing does not sell, has never sold and does not intend to sell clothing under the 'athletica.net' mark or any other mark that is arguably confusingly similar to Gap's ATHLETA mark.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

through their athletica.net website. Decl. of Nancy Orsolini ¶¶ 3–9, Exs. 13–15. All of these sales appear to have taken place after defendants claim to have stopped the sale of Athletica-branded merchandise. Id. ¶¶ 3–7. The sales marketed defendants' clothing as "Women's Yoga Leggings by Athletica," id. Ex. 13, "Athletica InTouch Organic Yoga Leggings," id., "Athletica Set of Two Organic Yoga Leggings," id. Ex. 14,"InTouch Organic Yoga Leggings from Athletica," id., or "Athletica Women's Organic Yoga Leggings," id. Ex. 15.

Largely as a result of defendants' marketing campaign, plaintiff documented a number of instances of actual consumer confusion, as numerous individuals have contacted Athleta thinking that Athleta, not defendants, had made offers on these websites for Athleta products. Id. ¶¶ 10–17. In conjunction with its reply memorandum, plaintiff submits evidence of additional instances of actual consumer confusion that have occurred since plaintiff filed its motion. Supp. Decl. of Nancy Orsolini Exs. 38, 39. As with the evidence of consumer confusion that plaintiff had already submitted, these consumers have called or emailed Athleta with complaints that they have not received order status confirmation emails from Athleta, that products they ordered have not yet arrived, or that their Living Social discount codes that they purchased are not being accepted by Athleta's website. Id. ¶¶ 4–8.

Second, defendants appear to have copied portions of plaintiff's website, including various consumer reviews that were identical to ones appearing on plaintiff's site describing plaintiff's products. Roering Decl. ¶¶ 22–23; Exs. 8–9. These consumer reviews reappeared, verbatim, on defendants' athletica.net website. In addition, plaintiff's proprietary fabric trademarks VELOCITEK and PILAYO were found listed on athletica.net, id. ¶ 24, Exs. 8, 10; a description of yoga pants on plaintiff's site also appeared verbatim on defendants' website, id. ¶ 25, Exs. 10–11; and defendants used a "free shipping" image to promote its shipping policy that was identical to one used on plaintiff's site until October 2012, id. ¶ 26, Ex. 12. Besides these particular instances of purported copying, plaintiff notes that a number of other features render defendants' website more similar to plaintiff's than previous iterations of defendants' site, including the use of a white background with menu options listed" across the top of the page, and a large graphic in the center of the page and "1-2-3" off to the left side. Id. Ex. 12; Weinberger Decl. Ex. 25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

On November 27, 2012, counsel for plaintiff sent a renewed demand letter to counsel for defendants. Weinberger Decl. Ex. 28. Around this time, plaintiff's counsel also learned that Peck had recently been engaged in negotiations with an Athleta manager regarding the sale of the athletica.net domain name to Athleta. Id. Ex. 30. After counsel for both parties conferred, defendants' counsel represented that their client had no inventory remaining bearing the ATHLETICA mark, to which plaintiff had objected, and would discontinue any use of the "spiral design" that defendants had begun using in February 2012; remove all customer reviews from their website pending a thorough review; remove all references to plaintiff's proprietary fabrics from their website; make "significant changes" to their website to avoid any confusion with the use of ATHLETICA; no longer use the term ATHLETICA in any promotions such that it could be construed as a term for apparel; and remove the disputed "free shipping" image from its website. Id. Ex. 31 (Letter of December 4, 2012). Defendants also reiterated their desire to "reach an amicable resolution" with plaintiff by selling the athletica.net domain to plaintiff or even manufacturing Athleta-brand clothes on plaintiff's behalf. Id.

Despite defendants' representations, a paralegal employed by plaintiff's counsel was able to order and receive apparel from defendants bearing the same ATHLETICA mark and spiral design the next day. Id. Exs. 32–33. Responding to plaintiff's counsel's order of these ATHLETICA branded goods, defendants' counsel wrote that the order was fulfilled by a new customer service representative, who "was unaware at the time that Pitbull was no longer fulfilling orders for ATHLETICA merchandise." Kobulnick Decl. Ex. F (Letter of December 10, 2012); see also Peck Decl. ¶ 15. Defendants' counsel also represented that defendants had further scrutinized the athletica.net website to "eliminate any possible doubt" that defendants were in the business of selling ATHLETICA brand apparel. Id. Defendants also offered to provide an accounting with respect to all goods sold under the ATHLETICA brand, a return of the unused "transfer tags" bearing the ATHLETICA name and spiral design that had not yet been affixed to any apparel, and a disgorgement of Pitbull's profits with respect to the approximately 1,900 apparel items sold under the ATHLETICA brand. Id.[3] Defendants refused to agree to discontinue use

---

[3] Plaintiff's counsel also notes that they found an additional reference to plaintiff's proprietary VELOCITEK fabric not on athletica.net, but on another of defendants' websites: sfcitylights.com. Supp. Decl. Weinberger Ex. 40.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

of ATHLETICA as a service mark in conjunction with its online store, or to discontinue use of the athletica.net website in connection with the sale of apparel. This suit followed.

### III. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009); see also Cal Pharms. Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849 (9th Cir. 2009). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011). A "serious question" is one on which the movant "has a fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984). Under either formulation, demonstrating a likelihood of success on the merits and irreparable harm is "most critical." Nken v. Holder, 556 U.S. 418, 434 (2009).

### IV. ANALYSIS

#### A. Likelihood of Success on the Merits

Plaintiff moves for a preliminary injunction on the basis of its claims for federal trademark infringement and counterfeiting, and unfair competition and false designation of origin under state and federal law. An understanding of the nature of plaintiff's claims is crucial to understanding both plaintiff's likelihood of success and the proper scope of injunctive relief. First, 15 U.S.C. § 1114 prohibits the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services [when] such use is likely to cause confusion, or to cause mistake. . . ." Second, 15 U.S.C. § 1125(a) prohibits the use in commerce of "any word, term, name, symbol, or device," which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

person. . . ." In support of both of these claims, plaintiff alleges that defendants' use of the ATHLETICA mark and "spiral design," described above, in addition to defendants' other conduct that plaintiff complains of, are "likely to cause confusion" and "to deceive. . . the general purchasing public as to the source. . . and/or sponsorship of Defendants, the athletica.net website, and Defendants' goods or services offered thereunder. Compl. ¶¶ 35, 40. According to plaintiff's, defendants' conduct is "likely to deceive the public into believing that such services are provided, authorized, endorsed, or sponsored by Athleta. . . ." Id. Plaintiff's claims are thus not limited to the use of the ATHLETICA mark on athletic clothing; plaintiff's allegation is that defendant's actions, taken as a whole, are likely to cause confusion and deceive members of the purchasing public into believing that *any* goods sold through defendants' athletica.net website are sponsored by or affiliated with Athleta.

To establish a likelihood of success on these claims, plaintiff bears the burden of demonstrating that defendant "is using a mark confusingly similar to a valid, protectable trademark of [plaintiff's]." Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F. 3d 1036, 1046 (9th Cir. 1999) (citing AMF v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir. 1979)). Because plaintiff's state law claims mirror its federal claims, the analysis is the same for all of plaintiff's claims at issue. See Ford Motor Co. v. Ultra Coachbuilders, Inc., 57 U.S.P.Q. 1356, 1359 (C.D. Cal. 2000). Defendants do not dispute that plaintiff owns valid trademarks in its ATHLETA and "Pinwheel Design" marks, and that plaintiff is the senior user of the ATHLETA mark. Therefore, the Court will address the likelihood of confusion factors below.

The Ninth Circuit applies the eight-factor Sleekcraft test to determine whether a likelihood of confusion exists. 599 F.2d 348–49. The factors are: (1) the strength of the plaintiff's mark; (2) the relatedness or proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the degree to which the parties' marketing channels converge; (6) the type of goods and degree of care purchasers are likely to exercise in selecting the goods; (7) evidence of the defendant's intent; and (8) the likelihood that the parties will expand their product lines. Id. The factors "should not be rigidly weighed," Dreamwerks Prod. Grp., Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998), but are instead "intended to guide the court in assessing the basic question of likelihood of confusion," E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1290 (9th Cir. 1992). The likelihood of confusion test considers whether "the similarity of the marks is likely to confuse customers about the source of the products." Id. In addition,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

close cases should be resolved in favor of the senior user of the mark—here, Athleta. Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1404 n. 14 (9th Cir. 1997).

### 1. Strength of the Marks

A mark's strength is based on its conceptual strength and strength in the marketplace. See GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th Cir. 2000). Defendants here do not dispute that plaintiff's marks are commercially strong. Conceptual strength, in turn, depends on the mark's characterization: the strongest marks are "arbitrary" ones and "suggestive" marks; the weakest are "descriptive" and "generic" marks. See Sleekcraft, 599 F.2d at 349. Weaker marks are afforded less protection than strong ones, with generic marks afforded no protection at all. See Matrix Motor Co. v. Toyota Jidosha, 290 F. Supp. 2d 1083, 1091 (C.D. Cal. 2003). In addition, "in situations in which the appearance of the conflicting marks and the services provided are almost identical, the strength of the mark is of diminished importance in the likelihood of confusion analysis." GoTo.com, 202 F.3d at 1208.

The Court finds that plaintiff's pinwheel design mark is a strong, arbitrary, and inherently distinctive mark, because this design bears no relation to the goods on which it is sold and has no other apparent meaning. Defendants do not contend otherwise. As to plaintiff's ATHLETA mark, defendants do not dispute that "Athleta" is a coined term with no dictionary meaning. Defendants argue, however, that the term "Athleta" is not a particularly strong mark for the sale of "athletic" clothing, as plaintiff's mark is suggestive of the goods it sells. Opp'n at 9. In addition, defendants note that numerous other third party marks including the letters "ATHLET–" are registered with the U.S. Patent and Trademark Office ("USPTO") for use with athletic apparel or goods.

Defendants' argument is unavailing. The Court notes that the term "Athleta" potentially conjures up an image of something related to athletics—but the term is no more suggestive than this. At most, plaintiff's mark is mildly suggestive, but the mark itself does not suggest anything encompassing women's apparel to the exclusion of other athletic-related goods and services.

Moreover, the twenty-two registrations that plaintiff has identified in its opposition as including the letters "ATHLET–" does not detract from the distinctiveness of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

plaintiff's mark. See Weinberger Supp. Decl. Ex. 42 (copies of the USPTO entries for these marks). As defendants themselves state in opposition, a plaintiff's arbitrary mark may be rendered weak only where "there has been extensive third party *use* of similar marks on similar goods," Opp'n at 11 (emphasis added) (citing Matrix, 290 F. Supp. 2d at 1091), not merely registrations. Of the twenty-two registrations defendants identify, half of these are pending applications, not registrations. Applicants for a trademark do not yet own the right to use the mark in commerce in connection with a specified category of goods, Glow Indus., Inc. v. Lopez, 252 F. Supp. 2d 962, 976 (C.D. Cal. 2002), and therefore these are plainly not third-party "uses" of similar marks on similar goods. See Matrix, 290 F. Supp. 2d at 1091; 2 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Comp. § 11:89 (4th ed. 2012). As to the other eleven registrations, several of these marks are registered based on an intent to use the mark in commerce. Weinberger Supp. Decl. Ex. 42. This too is insufficient evidence of use of the mark in commerce—intent to use is not demonstrated use of a mark in commerce, let alone extensive use.[4] As to the remaining marks, such as LULULEMON ATHLETICA, STAR ATHLETICA, and ATHLETECH, these marks may bear a passing similarity to plaintiff's mark. However, defendants have not demonstrated how the use of "ATHLET–" in these marks renders ATHLETA weak or less distinctive. This factor thus favors plaintiff.

---

[4] At oral argument, counsel again argued that there is significant "dilution" in the field with respect to ATHLETA, because of the eleven registrations that include "ATHLET–" in some form—including Athleta's competitor, LULULEMON ATHLETICA. Although these marks may be presently used in commerce, defendants are unable to demonstrate "extensive" use of these other marks in commerce, such that plaintiff's mark is weak or merely suggestive. In addition, defendants' suggestion that there is no confusion between ATHLETA and LULULEMON ATHLETICA does not help their cause. Counsel's argument also overlooks the crucial difference between these two marks—LULULEMON—which clearly distinguishes this mark from plaintiff's, unlike the situation here. Contrary to defendant's argument, defendants are of course not precluded from growing their business; defendants must not do so, however, in a manner that is proscribed by the Lanham Act.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

### 2. Relatedness of the Goods

Both parties sell fitness and athletic-focused clothing for women, which is strong *prima facie* evidence that the parties goods are related. Defendants arguments in the face of this foundational similarity are without merit. First, the fact that defendants sell other brands of apparel through the Athletica online store, not ATHLETICA branded apparel, is beside the point, as is defendants' contention that it has "no intention" of selling ATHLETICA branded merchandise in the future. The relatedness factor is concerned with what the goods in question are—here, regardless of the mark affixed to them, both parties are clearly in the business selling workout clothing for women. And both parties do so through their online retail platforms, although plaintiff also offers its goods through brick and mortar retail outlets. Second, the price differential between the parties' respective goods does not appear to be so great as to render them unrelated, particularly where plaintiff has offered numerous instances of actual consumer confusion as to the source of their goods. The cases defendants cite in opposition are inapposite. Taking one example, a sports agency providing talent services to professional athletes is not nearly as related to a television program about football players as one online store selling women's athletic apparel is to another online store selling women's athletic apparel. Playmakers, LLC v. ESPN, Inc., 297 F. Supp. 2d 1277, 1282 (W.D. Wash. 2003), aff'd 376 F.3d 894 (9th Cir. 2004). This factor favors plaintiff.

### 3. Similarity of the Marks

To address the similarity of the marks, a court considers the "sight, sound, and meaning" of the marks, taking into consideration how the marks are encountered in the marketplace. Sleekcraft, 599 F.2d at 351; GoTo.com, 202 F.3d at 1205–06. Similarities are to be "weighed more heavily than differences." GoTo.com, 202 F.3d at 1206. In addition, where the parties offer competing goods, a lower level of similarity will suffice to support a finding of a likelihood of confusion. Sleekcraft, 599 F.2d at 350.

Defendants do not appear to dispute that the ATHLETICA clothing labels they used—which bore a striking resemblance to plaintiff's ATHLETA labels—qualify as highly similar to plaintiff's. See, e.g., GoTo.com, Inc., 202 F.3d at 1206 ("With a single glance at the two images, one is immediately struck by their similarity."). Defendants focus on the current use of the marks on the parties' respective websites, as shown below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|

| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. |
|---|---|

  

Opp'n at 12.  While these marks lack the near identity of the ATHLETICA mark that defendants used in conjunction with a spiral design to plaintiff's ATHLETA mark, there are nonetheless similarities between the above-depicted marks, particularly in how the marks are used in the marketplace.  The lettering of the marks differs only by inclusion of the "ic" in defendants' mark, and the "c" is partially obscured by the three-petal leaf design that defendants have adopted.  This leaf design shares minimal elements of plaintiff's pinwheel design, including the use of a purple color with petal-shapes anchored at the center.  Even viewing these marks in isolation, the marks bear significant similarity.[5]

  Moreover, the marks themselves are only part of the inquiry.  These marks coexist in a marketplace that has changed as a result of defendants' gradual encroachment on plaintiff's marks, culminating in defendants' use of the ATHLETICA mark with a spiral design on women's athletic clothing.  As discussed previously, this encroachment has taken many forms, including defendants' promotions on Groupon and Living Social, copying of customer reviews from plaintiff's website, use of plaintiff's proprietary fabric names on athletica.net, copying product descriptions from plaintiff's website, copying a free shipping banner from plaintiff's site, and generally adopting a similar look and feel to plaintiff's website for their athletica.net website.  Before 2010, when defendants had not engaged in significant promotional efforts of ATHLETICA merchandise and apparent copying of plaintiff's marks and material from its website, the marks may have been able to coexist in the marketplace, as defendants argue.  However, defendants gradual encroachment onto plaintiff's protected marks have greatly increased the similarity of the marks as they are encountered in the marketplace by consumers.  See Grupo Gigante SA

---

  [5] At oral argument, counsel for defendants noted that leaf-shapes of defendants' website logo represent the environmentally-friendly characteristics of defendants' products, not any attempt to copy or allude to plaintiff's marks.  The reasons for defendants choosing this design, however, are largely irrelevant; the question under this prong is the similarity of the marks based upon "sight, sound, and meaning" as the marks are encountered in the marketplace, and the Court finds these marks are similar in all three dimensions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

de CV v. Dallo & Co., 391 F.3d 1088, 1103 (9th Cir. 2004) (recognizing the doctrine of progressive encroachment, whereby a defendant "engages in de minimis infringement at first, but then gradually encroaches on the plaintiff's market"). The degree to which such confusion will persist in the marketplace, based on the similarity of the marks as they are presently encountered, is a more difficult question. If defendants' website reverts to prior form, and defendants cease to engage in future promotions of the type that appear to have engendered a host of confusion (along with ceasing the other objectionable conduct described above), then presumably both websites could coexist without future instances of confusion. But hypothetical coexistence in the future is not the issue presented here.[6]

For present purposes, therefore, taking into consideration the "the circumstances surrounding the purchase of goods" and what actually "occurs in the marketplace," the Court finds that the parties' marks are similar and that this factor favors plaintiff. See CytoSport, Inc. v. Vital Pharmaceuticals, Inc., 617 F. Supp. 2d 1051, 1067 (E.D. Cal. 2009) aff'd, 348 F. App'x 288 (9th Cir. 2009) (quoting Walt Disney Productions v. Air Pirates, 581 F.2d 751, 759 (9th Cir. 1978)).

### 4. Evidence of Actual Confusion

Plaintiff offers compelling evidence of actual confusion as to the source of defendants' goods, as set forth above. Such evidence is "persuasive proof that future confusion is likely." SunEarth, Inc., v. Sun Earth Solar Power Co., 846 F. Supp. 2d 1063,

---

[6] Counsel for defendants argued at the hearing that the Court could not assess the similarity of the websites based solely upon their layout, design, and overall look and feel, but that a proper comparison requires an inspection of the "source code" of both websites. However, because this case is not premised upon the copying of protected elements from plaintiff's website, counsel's argument misses the mark. The Court does not see how the source code of the parties' respective websites could create a likelihood of confusion as to the source of defendants' goods or defendants' affiliation with plaintiff; it is the overall look and feel of defendants' website vis-a-vis plaintiff's that causes confusion. Whether defendants (and plaintiff) utilized code available in the public domain or not in creating their website does not affect the fundamental similarities between the two websites, which is the relevant criterion in a likelihood of confusion analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

1079 (N.D. Cal. 2012) (citations and quotations omitted). Moreover, evidence of consumer confusion can also come from potential consumers of the products in question, in addition to actual purchasers. Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1216 (9th Cir. 2012) (noting that confusion on the part of non-consumers could "contribute to confusion on the part of the consumers themselves (i.e., non-consumers whose confusion could influence consumer perceptions and decision-making)"); see also 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:5 (4th ed. 2010) ("actionable confusion need not be limited to potential purchasers whose confusion could cause a direct loss of sales").

Defendants' arguments in the face of this evidence are without merit. First, defendants' numerous evidentiary objections are inapposite on this motion. Courts have found that a party-employee's declarations regarding consumer confusion are not considered hearsay, and moreover, the Court may accept and "consider hearsay in deciding whether to issue a preliminary injunction." Johnson v. Couturier, 572 F.3d 1067, 1083 (9th Cir. 2009); see also CytoSport, 617 F. Supp. 2d at 1074–75 ("employee testimony regarding consumer confusion is not being offered for the truth of the matter asserted by the confused consumer (the out-of-court declarant), but rather for the fact that the confusing statement was observed by the employee"). Second, contrary to defendants' contention, plaintiff's evidence is more than de minimis. In addition to the testimony of its customer service agents, plaintiff offers twenty-three additional documented instances of actual consumer confusion that have resulted from defendants' promotional offers. See Orsolini Supp. Decl. Exs. 38–39; see, e.g., Neighborhood Assistance Corp. of Am. v. First One Lending Corp., 12-cv-0463, 2012 WL 1698368, at *18 (C.D. Cal. May 15, 2012) (five instances of actual confusion).[7]

---

[7] At the hearing, counsel for defendants made much of the fact that the Court is impermissibly conflating the Groupon and Living Social promotions. He noted that most—but not all—of the evidence of actual confusion arises from the Living Social promotion, not the Groupon promotion. Counsel argues that only via Living Social are consumers actually directed to defendants' website; with Groupon, consumers place their order for defendants' goods directly on the Groupon website, and defendants then ship the goods directly to the consumer after Groupon forwards the consumer's order to defendants. Counsel also argued that the Groupon promotion made clear that his client was not offering ATHLETICA brand goods, but "InTouch" brand clothing "by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

Third, the Court fails to see how plaintiff is the cause of any consumer confusion, as defendants contend. The evidence of consumer confusion does not relate to plaintiff's purchase of a Google "AdWord" for the term ATHLETICA or the athletica.us domain name, nor the sale of clothing under the title "Athletica" through a "proxy page" available via at athletica.com. As the documented instances of consumer confusion demonstrate, customers have been confused by defendants' promotions of a confusingly similar website and goods, not any conduct of plaintiff. In light of the significant evidence of actual confusion, this factor favors plaintiff.

    **5.    Marketing Channels**

This factor is concerned with "where, how, and to whom the parties' products are sold." Frehling Enters., Inc. v. Int'l Select Grp., Inc., 192 F.3d 1330, 1339 (11th Cir. 1999). Other relevant considerations include the parties' "advertising, the existence of direct competition, and retail distribution." Matrix, 290 F. Supp. 2d at 1094. The parties share some of these characteristics in common. Both parties here utilize online stores to sell their goods, via similar domain names—athleta.com and athletica.net—and both parties use online marketing tools as well. Plaintiff also has brick and mortar stores, an additional channel of retail distribution that defendants' lack, as well as association with a web portal for all of the Gap brands (athleta.gap.com). While mere use of the internet to

---

Athletica." Counsel's arguments are without merit. As discussed in the previous footnote, the question before the Court is clear: based on the totality of the evidence before the Court, are defendants using a mark or marks confusingly similar to plaintiff's? Thus differences in the mechanics of how defendants have promoted their products does not affect the overall showing plaintiff's have made—that a likelihood of consumer confusion as to source and affiliation exists. In addition, although the majority of the instances of actual confusion evidence before the Court appear to arise from defendants' Living Social promotion, plaintiff also offers evidence of consumers confused by the Groupon promotion, in addition to consumers who purchased gift certificates from defendants' website independent of either sales promotion. Moreover, the Court disagrees with counsel's characterization of the advertisements on Groupon and Living Social. Advertising "Athletica InTouch Organic Yoga Leggings" for sale does create the impression that defendants are offering ATHLETICA brand women's athletic clothing, not merely "InTouch" brand clothing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

sell one's products is likely insufficient to constitute the same marketing channel, the similarity of the parties' domain names and appearance of their online apparel stores increases the similarity of their marketing channels. The Court finds that because of the similarity in the parties' distribution channels, this factor favors plaintiff, but only slightly. This is not a case where the parties goods are sold in the same stores, for example, where a likelihood of confusion is far greater. See CytoSport, Inc., 617 F. Supp. 2d at 1069 (documenting instances of confusion where the parties' products are sold side-by-side).

### 6. Remaining Factors

The remaining factors also support plaintiff's claims. First, defendant contends that the higher price of plaintiff's merchandise is evidence that consumers will be "highly discerning" in selecting goods. However, the substantial evidence of actual consumer confusion that plaintiff has submitted belies this assertion, and therefore the Court concludes that "exercise of care" factor favors plaintiff. The parties goods are not so divergent in price that consumers exercise sufficient care in making their purchases. Second, the Court finds much of defendants' explanation for their conduct to be lacking in credibility. For example, nowhere do defendants' address plaintiff's evidence that defendants directly copied consumer reviews from plaintiff's website. In addition, defendants' explanation for the use of plaintiff's proprietary fabric trademarks is questionable in light of their use of these marks on other websites owned by defendants as well. Moreover, defendants claim that they discontinued use of the spiral design accompanying the ATHLETICA mark on clothing in September 2012, yet such clothing was still available for purchase in December 2012. The intentionality factor thus weighs in plaintiff's favor.[8] Third, the Court agrees with plaintiff—both parties already sell

---

[8] At oral argument, counsel for defendants conceded that his client had made some decisions "not in its best interest," but argued that his client had never acted in bad faith. Counsel asserted that as soon as the copied customer review came to Peck's attention, it was removed from the website immediately; that as soon as Peck saw the objectionable design of the "transfer" that was affixed to only 1,900 items of clothing sold by defendants, he took immediate steps to discontinue its use; and that defendants invested significant time and expense in returning their website to its previous design. Whatever the motivations for their actions, the fact of the matter is that defendants did sell clothing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

women's athletic clothing online, which is sufficient to render the question of expansion moot. This factor therefore favors plaintiff as well.

  Weighing the factors above, the Court concludes that plaintiff has demonstrated a significant likelihood of success on its claims for trademark infringement and unfair competition. All of the factors considered above weigh in plaintiff's favor, some strongly so, supporting the conclusion that defendants are likely liable for infringing upon plaintiff's protected marks. Having found that plaintiff is likely to succeed on the merits of its claims, the Court addresses the other considerations for a grant of injunctive relief below.

  **B.**  **Irreparable Harm**

  As both parties recognize, "a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." Caribbean Marine Serv. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis and citations omitted). This demonstration requires evidence rather than mere speculation. See Winter, 555 U.S. at 21. Post-Winter, Courts have repeatedly found that losing control of one's reputation and good will in the marketplace supports the issuance of an injunction. See, e.g., Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); CytoSport, 617 F. Supp. 2d at 1081; Volkswagen AG v. Verdier Microbus & Camper, Inc., 09-cv-0231, 2009 WL 928130, at *6 (N.D. Cal. Apr. 3, 2009). Plaintiff here offers numerous, specific examples of the irreparable harm it is presently suffering as a result of defendants' actions.

---

bearing this confusingly similar design, both before and after they represented to plaintiff that they would cease doing so. Indeed, at oral argument, plaintiff's counsel offered recent screen captures of each party's website, which demonstrated that defendants' had recently adopted a new picture on the homepage of their website that is similar to the picture on homepage of plaintiff's website. As discussed in greater detail below, the totality of this evidence also supports the imposition of an injunctive relief in this case, because there is a likelihood of repetition and continuing harm to plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

First, plaintiff credibly contends that its goodwill and reputation in the marketplace have suffered as a result of the numerous consumers who have contacted plaintiff to complain. These consumers have expressed frustration to plaintiff with regards to the untimely shipment of merchandise or the non-receipt of confirmation emails, when in fact these consumers have ordered from defendants' website. Moreover, to the extent the parties' goods differ in quality, consumers' satisfaction with plaintiff's products may decrease as a result of these consumers purchasing defendants' products. Second, plaintiff is likely suffering from lost sales, since other consumers may have purchased clothing from defendants believing it to be from plaintiff. To the extent such marketplace confusion remains ongoing—and plaintiff offers evidence that it is—the Court concludes that plaintiff is suffering irreparable injury under the Lanham Act. Defendants' corrective actions cannot undue consumer confusion in the women's athletic apparel market that has already been sowed.

The Court also concludes that plaintiff had not unreasonably delayed in bringing suit to seek injunctive relief. A plaintiff may not be able to bring suit until defendants' progressive encroachment became actionable trademark infringement, once a plaintiff became aware of significant evidence of actual and likely confusion. See Grupo Gigante, 391 F.3d at 1103; Nat'l Customer Eng'g, Inc. v. Lockheed Martin Corp., 43 U.S.P.Q. 2d 1036, 1040 (C.D. Cal. 1997) (finding that delay "is not measured from a defendant's first use of the contested mark, but from the date that defendant began significantly impacting plaintiff's goodwill and business reputation"). On the other hand, "the plaintiff cannot simply wait without explanation to see how successful the defendant's business will be and then ask for an injunction to take away good will developed by defendant in the interim." Grupo Gigante, 391 F.3d at1102–03 (quoting 5 McCarthy § 31:14); see also Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc., 559 F.3d 985, 991 (9th Cir. 2009).[9]

---

[9] Neither party directly addresses the "E-Systems factors" for determining whether laches bars a claim for either damages or injunctive relief in a trademark infringement action. See Grupo Gigante., 391 F.3d at 1102 (describing factors as: "1. strength and value of trademark rights asserted; 2. plaintiff's diligence in enforcing mark; 3. harm to senior user if relief denied; 4. good faith ignorance by junior user; 5. competition between senior and junior users; and 6. extent of harm suffered by junior user because of senior user's delay") (citing E-Systems Inc. v. Monitek, Inc., 720 F.2d 604, 607 (9th Cir.1983)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

Here, plaintiff first sent defendants a demand letter in 2010 regarding the respective appearances of the parties' websites; this led to discussions regarding a potential sale of the athletica.net domain name, but nothing came of this discussion. At that time, defendants' counsel credibly argued that plaintiff likely had no actionable claim for trademark infringement, because plaintiff only complained of the similarity of the parties websites. See Weinberger Decl. Ex. 24. Beginning in 2012, however, defendants began to engage in the conduct that plaintiff challenges by way of this suit, the conduct that led to significant consumer confusion that appears to be ongoing. Because it was only defendants' recent conduct that created this likelihood of confusion, plaintiff did not unreasonably delay in bringing this suit for injunctive relief.

Accordingly, the Court finds that plaintiff is likely to suffer irreparable injury in the absence of some form of injunctive relief.

### C. Balance of the Hardships and the Public Interest

"In each case, a court must balance the competing claims of injury and must consider the effect on each party of granting or withholding of the requested relief." Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 542 (1987). Defendants contend that, in fact, they are the parties who will suffer "massive harm" if they are enjoined from continuing to operate their athletica.net website, but defendants offer no evidence in support of this contention. Even absent direct evidence, defendants will presumably suffer some harm if they are enjoined from continuing to operate the athletica.net website. Plaintiff's argument that defendants will not be harmed "in any manner" thus reaches too far. Reply at 23. However, defendants have not articulated how any harm they will suffer is greater than the harm to plaintiff's good will and business reputation, as detailed above, other than to argue that "everything will change for the worse." The Court also notes plaintiff's evidence that defendants have numerous

---

As apparent from the discussion in this order, these factors largely weigh in plaintiff's favor, as this is a case of progressive infringement upon plaintiff's strong marks. Moreover, to the extent defendants raise the equitable defense of laches, defendants' apparent bad faith in adopting the ATHLETICA mark and accompanying spiral design bars their assertion of the defense. See Nat'l Customer, 43 U.S.P.Q. at 1040.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

other websites whereby they offer substantially the same merchandise for sale. Weinberger Decl. 37.

In addition, the Court must consider the public interest in enjoining defendants' conduct. Winter, 555 U.S. at 32. "The usual public interest concern in trademark cases [is] avoiding confusion to consumers." Internet Specialties, 559 F.3d at 993. Here, documented consumer confusion supports the issuance of a preliminary injunction, in the interest of avoiding future instances of the same. Accordingly, the Court concludes that the balance of the hardships and the public interest factors tip in plaintiff's favor.

### D. Proper Scope of Injunctive Relief

Considering plaintiff's likelihood of success on the merits of its claims, the irreparable harm plaintiff is likely to suffer, the balance of hardships, and the public interest, the Court finds that a preliminary injunction is an appropriate remedy pending trial. The sole question remaining is the proper scope of the injunction and the proper amount of a bond, pursuant to Fed. R. Civ. P. 65(c).

When entered, a preliminary injunction should preserve the status quo ante litem. This standard "refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy." GoTo.com, Inc., 202 F.3d at 1210 (quotations omitted). Here, the uncontested status quo that preceded the present controversy consisted of both parties operating their respective websites that sold women's athletic apparel. At that time, defendants had not engaged in any of the objectionable conduct described extensively herein, including their apparent adaptation of a website similar to plaintiff's site and the promotion of ATHLETICA merchandise, branded or not, through Groupon and Living Social offers in a manner that created consumer confusion.

Plaintiff argues that defendants should be enjoined from operating their website in any form, because defendants have "'poisoned the well' for their online ATHLETICA retail store." Reply at 20. In plaintiff's view, it is the "the continued operation of the retail store" that is "causing confusion" amongst consumers, and therefore enjoining the operation of the athletica.net store is properly within the scope of a preliminary injunction. Id. Moreover, because defendants can sell their apparel at their other online retail outlets (and already do so), plaintiff argues that enjoining defendants from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10499-CAS (FMOx) | Date | January 7, 2013 |
|---|---|---|---|
| Title | ATHLETA, INC. V. PITBULL CLOTHING CO., INC., ET AL. | | |

continuing to operate their athletica.net store will not cause them substantial harm. In addition, plaintiff contends that because defendants offer "no financial analysis or documentary evidence to support a bond" in the amount of $247,000, only a nominal undertaking should be required. Reply at 23 (quoting CytoSport, 617 F. Supp. 2d at 1081–82).

Considering the respective positions of the parties, the Court concludes that it will not enjoin defendants' operation of the athletica.net website in its entirety at this time. Defendants must, however, cease from utilizing any graphic, textual, or other design elements on athletica.net that are similar to plaintiff's website or likely to cause continued consumer confusion as to the source of defendants' goods. Defendant may not offer any goods that bear a strong resemblance to Athleta goods, may not advertise or use trade dress on its website that looks like Athleta, nor do anything that suggests any affiliation with Athleta or that Athleta in any way sponsors defendants' products.

Defendants offer no relevant evidence on the proper amount of a bond. Defendants' argument that a bond in the amount of $247,000 is reasonable because this is the "undisputed fair market value of the athletica.net domain name" is besides the point, in addition to the fact that this valuation is subject to reasonable dispute. The amount of a bond should be linked to any loss defendants' would suffer as a result of their business being shuttered pending trial, not the value of the domain name. Defendants will not "lose" the value of the domain name if they are enjoined from using it pending trial, but may suffer an undetermined loss of business. Without evidence before it to support a bond in any amount, the Court hereby ORDERS defendants to submit any such evidence and supporting argument by Tuesday, January 15, 2013 at 12 p.m. Plaintiff may file an opposition by Thursday, January 17, 2013 at 12 p.m.

## V.   CONCLUSION

In accordance with the foregoing, the Court finds that plaintiff has carried its burden for the issuance of a preliminary injunction. The Court ORDERS plaintiff to submit a proposed form of injunction that complies with this order.

IT IS SO ORDERED.

|  | 00 | : | 31 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |